UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-61975-CIV-COHN/SELTZER

EURO RSCG DIRECT RESPONSE, LLC,
d/b/a EURO RSCG EDGE and EURO RSCG
DRTV, a Delaware limited liability company,

    Plaintiff,

vs.

GREEN BULLION FINANCIAL SERVICES
f/k/a CASH4GOLD, LLC d/b/a "CASH4GOLD"
and "CASH4GOLD.COM", a Florida limited
liability company, et al.,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS, FOR MORE DEFINITE STATEMENT, AND TO STRIKE

**THIS CAUSE** is before the Court on Defendant Green Bullion Financial Services' Motion to Dismiss, For More Definite Statement, and to Strike Portions of Plaintiff's Second Amended Complaint [DE 45] ("Green Bullion Motion") and Defendants Jeffrey Aronson and Howard Mofshin's Motion to Dismiss, For More Definite Statement, and to Strike Portions of Plaintiff's Second Amended Complaint [DE 46] ("Aronson & Mofshin Motion") (collectively "Motions"). The Court has carefully reviewed the Motions, Plaintiff Euro RSCG Direct Response LLC's ("Plaintiff") Opposition to Defendant Green Bullion Financial Services, LLC's Motion to Dismiss, for More Definite Statement, and to Strike Portions of Plaintiff's Second Amended Complaint [DE 59] ("Green Bullion Response"), Plaintiff's Response in Opposition to Jeffrey Aronson and Howard Mofshin's Motion to Dismiss the Second Amended Complaint [DE 60] ("Aronson and Mofshin Response"), Defendant Green Bullion Financial Services Reply Memorandum in Further Support of

Its Motion to Dismiss, for More Definite Statement, and to Strike Portions of Plaintiff's Second Amended Complaint [DE 72] ("Green Bullion Reply"), Defendants Jeffery Aronson and Howard Mofshin's Reply Memorandum in Further Support of Their Motion to Dismiss, for More Definite Statement, and to Strike Portions of Plaintiff's Second Amended Complaint [DE 73], the record in the case, and is otherwise fully advised in the premises.

## I. BACKGROUND

On September 7, 2011, Plaintiff filed suit against Defendants Green Bullion Financial Services f/k/a Cash4Gold, LLC d/b/a Cash4Gold and Cash4Gold.com ("Green Bullion"), Mangrove III US Investments, LLC ("Mangrove")[1], Jeffrey Aronson ("Aronson"), Howard Mofshin ("Mofshin") and Does 1-20 (collectively "Defendants"). Plaintiff filed a Second Amended Complaint [DE 40] on November 28, 2011. The Second Amended Complaint ("2d Am. Compl.") states that Plaintiff provided direct response advertising for Green Bullion and that Green Bullion has failed to pay for those services, causing Plaintiff to suffer damages in excess of $2.5 million. 2d Am. Compl. ¶ 1. Plaintiff also seeks to avoid a series of fraudulent transfers under which Green Bullion allegedly transferred its assets to Aronson, Mofshin, Mangrove, and Does 1-5. Id. ¶ 2.

Green Bullion provides a mail order service for customers to send broken and old jewelry to its office. Id. ¶ 7. Green Bullion appraises the jewelry and sends the customer a check for the appraised amount. Id. Plaintiff alleges that it provided

---

[1] Defendant Mangrove has not appeared or otherwise defended this action. On April 25, 2012, a Clerk's Default was entered against it. See DE 83.

advertising services for Green Bullion under three separate agreements.  Id. ¶ 8.  Under the Media Purchasing Agreement, Plaintiff was appointed as the non-exclusive agent for Green Bullion to purchase long and short term commercial time to benefit Green Bullion on national cable networks, regional networks, local television stations, and local cable systems in the United States and Canada.  Id. ¶ 18.  Plaintiff also entered a Superbowl Advertising Agreement with Green Bullion under which Plaintiff would create and produce commercials for the 2009 Superbowl for Green Bullion.  Id. ¶ 27.  Finally, Plaintiff and Green Bullion entered into a 2009 Advertising Agreement under which Plaintiff agreed to create short form direct television advertising for Green Bullion.  Id. ¶ 29.[2]  Plaintiff alleges that between 2007 and 2010 it provided over $75 million in services to Green Bullion under the three Agreements.  Id. ¶ 32.

Plaintiff alleges that Green Bullion was undercapitalized.  Id. ¶ 41.  Around June 2010, Plaintiff alleges that Mangrove invested $16 million in Green Bullion.  Id. ¶ 43.  Rather than using this money for operations or to pay debt, Plaintiff alleges that Defendants diverted the money to existing owners of Common Units and Series A Preferred Units including Defendants Aronson and Mofshin.  Id. ¶ 44.  Plaintiff commenced suit in state court in San Diego to recover against personal guarantees by Aronson, the founder and CEO of Green Bullion and its president, Mofshin.  Id. ¶ 49.  Plaintiff then learned that two UCC-1 financing statements were filed reflecting transfer of all-asset security interests by Green Bullion to insiders Aronson and Mangrove.  Id.

---

[2]  The Court will collectively refer to the Media Purchasing Agreement, the Super Bowl Advertising Agreement, and the 2009 Advertising Agreement as "the Agreements" or "the three Agreements."

Plaintiff believes that Green Bullion is insolvent and that the insolvency was caused by these insider transfers.  Id. ¶ 54.

The Second Amended Complaint asserts three breach of contract claims against Defendant Green Bullion (Counts I-III), an open account claim against Green Bullion (Count IV), an account stated claim against Green Bullion (Count V), a fraud in the inducement claim against Green Bullion (Count VI), and two fraudulent transfer claims against all named Defendants and Does 1-5 (Count VII-VIII).  Defendants Aronson and Mofshin have now moved to dismiss the fraudulent transfer claims asserted against them or alternatively for a more definite statement.  Defendant Green Bullion moves to dismiss all counts of the Second Amended Complaint asserted against it or alternatively for a more definite statement.  All three Defendants move to strike Plaintiff's request for attorneys fees under various claims.

## II. DISCUSSION

### A. Legal Standard For Motions to Dismiss and Motions for a More Definite Statement.

Under Federal Rule of Civil Procedure 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action.  Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).  Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor.  Twombly, 550 U.S. at 555.  A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations.  Id.  Accordingly, a well pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'"  Id. at 556.

Federal Rule of Civil Procedure 12(e) provides that a party "may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  "A Rule 12(e) motion is appropriate if the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself]."  Ramirez v. FBI, No. 8:10-cv-1819-T-23TBM, 2010 WL 5162024, at *2 (M.D. Fla. Dec. 14, 2010) (quoting Sun Co., Inc. (R &M) v. Badger Design & Constr., Inc., 939 F. Supp. 365, 368 (E.D. Pa.1996) (internal quotation marks omitted)).  Such a motion "is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail."  Id. (quoting Aventura Cable Corp. v. Rifkin/Narragansett S. Fla. CATV Ltd. P'ship, 941 F. Supp. 1189, 1195 (S.D. Fla.1996) (internal quotation marks omitted)).

### B. Green Bullion's Motion for a More Definite Statement of Counts II Through V.

Green Bullion moves, pursuant to Rule 12(e) for a more definite statement regarding Counts II through V.  Green Bullion Motion at 3-6.  As grounds for this motion, Green Bullion states that it "cannot prepare a response to Counts II through IV because Euro has failed to identify and explain the 'credit terms' to which it refers throughout the

5

Second Amended Complaint." Id. at 3.  Green Bullion contends that "[u]nless Euro identifies the applicable credit terms as well as how Green Bullion breached them, it is impossible for Green Bullion to know which, if any, contract terms or credit terms it has allegedly breached by continuing to make partial payments in arrears in the same manner it is alleged to have done since the beginning of the parties' relationship." Id. at 5.  Plaintiff opposes Green Bullion's Motion, arguing that these counts "are well pleaded causes of action for breach of contract, for open account, and for account stated." Green Bullion Response at 4.  Plaintiff also notes that motions for more definite statement are disfavored and that the Second Amended Complaint alleges that the "credit terms" Green Bullion refers to in its motion apply only to the Media Purchasing Agreement. Id. at 4-6.

The Court agrees with Plaintiff that Green Bullion is not entitled to a more definite statement.  As Plaintiff notes, federal courts generally disfavor motions for a more definite statement. Clearwater Consulting Concepts, LLP v. Imperial Premium Fin., LLC, No. 09-81042-CIV, 2010 WL 916392, at *1 (S.D. Fla. Mar. 11, 2010).  A motion for a more definite statement "is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail." Id.  The Court finds that the Second Amended Complaint, including Counts II through V, is not an "unintelligible pleading" which requires a more definite statement. See id. at *2 (finding that a more definite statement was not warranted on a breach of contract claim that alleged that the parties entered a written agreement (and in fact attached a copy of the written agreement to the complaint), that the plaintiff performed its duties under the agreement, and the defendant breached the contract by failing to pay fees it owed to plaintiff under the

agreement).

Here, Plaintiff has alleged the elements for breach of contract in Counts II and III: (1) it entered certain agreements with Green Bullion; (2) it performed its obligations under the agreements; and (3) that Green Bullion breached the agreements by failing to pay amounts due to Plaintiff. 2d Am. Compl. ¶¶ 65-81. Plaintiff has also alleged the elements for open account and account stated. Id. ¶¶ 82-90; Fla. R. Civ. P. Form 1.932 (Open Account), Fla. R. Civ. P. Form 1.933 (Account Stated); Fed. R. Civ. P. Form 10; Law Offices of David J. Stern, P.A. v. Bank of Am. Corp., No. 11–21349–CIV, 2012 WL 112935, at *4 (S.D. Fla. Jan. 12, 2012) (finding that plaintiff stated claim for open account where the complaint complied with the Florida and Federal Rules of Civil Procedure form). Because Plaintiff has met the pleading requirements of Federal Rule of Civil Procedure 8(a), Green Bullion is not entitled to a more definite statement. See Clearwater Consulting Concepts, LLP, 2010 WL 916392, at *2 (noting that "[t]he discovery process will afford defendant the opportunity to explore the factual basis of plaintiff's claims and to narrow issues regarding the specific referrals at issue and the dollar amount of damages."); see also BB In Tech. Co., Ltd. v. JAF, LLC, 242 F.R.D. 632, 640 (S.D. Fla. 2007) (finding that defendants were not entitled to a more definite statement where amended complaint was "not so vague and ambiguous that Defendants cannot respond in good faith or without prejudice.").[3]

---

[3] Plaintiff contends that the "credit terms" referenced in paragraphs 25 and 35 of the Second Amended Complaint apply solely to the Media Purchasing Agreement. Green Bullion Response at 5-6. Green Bullion disputes this, noting that Paragraph 35 references "the credit terms established in the Agreements." Green Bullion Reply at 5 (citing 2d Am. Compl. ¶ 35). Counts II through V, the counts for which Green Bullion seeks a more definite statement, do not mention the "credit terms."

**C. Green Bullion's Motion to Dismiss Count VI.**

Green Bullion moves to dismiss Plaintiff's claim for fraud in the inducement on the grounds that it is barred by the economic loss rule.  Green Bullion Motion at 6.  Alternatively, Green Bullion moves to dismiss this claim for failure to state a claim.  Id.  Plaintiff contends that its fraudulent inducement allegations apply to "additional services requested in late 2010 after the three contracts were breached."  Green Bullion Response at 7.  Thus, Plaintiff claims that the economic loss rule cannot bar its fraud in the inducement claim.  See id. at 8-9.  Plaintiff also argues that it has stated a claim for fraud in the inducement.  Id. at 10.

"The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses."  Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 536 n.1 (Fla. 2004).  Florida courts have applied the economic loss rule "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract."  Id. at 536.[4]  This rule was developed "to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort."  Id.  "Underlying this rule is the assumption that the

---

2d. Am. Compl. ¶¶ 65-90.  Plaintiff has also attached all three Agreements as exhibits to the Second Amended Complaint.  Thus, to the extent there is an inconsistency within the Second Amended Complaint, the exhibits thereto control.  Friedman v. Mkt. St. Mortg. Corp., 520 F.3d 1289, 1295 n.6 (11th Cir. 2008).

[4]  The economic loss rule also applies where the defendant is a manufacturer or distributor of a defective product which damages itself but does not cause personal injury or damage to any other property. Am. Aviation, Inc., 891 So. 2d at 536.

8

parties to a contract have allocated the economic risks of nonperformance through the bargaining process." Id. The Florida Supreme Court has elaborated that:

> A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.

Id. at 536-537.  Nonetheless, the Florida Supreme Court has cautioned that the economic loss rule "would not prevent the bringing of an action and recovery for intentional torts, such as, fraud, conversion, intentional interference, civil theft, abuse of process, and other torts requiring proof of intent."  Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216, 1223 (Fla. 2010) (citing Am. Aviation, Inc., 891 So. 2d at 543 n.3).

Green Bullion contends that "Count VI is barred by the economic loss rule because Green Bullion's alleged failure to pay for Euro's services and honor the Putative Guaranties, is, at best a breach of the Agreements and Putative Guaranties, and ***not*** actionable fraud."  Green Bullion Motion at 7.  Plaintiff, however, states that its fraud in the inducement claim is based on "additional services separate and apart from the three already-breached contracts."  Green Bullion Response at 9.  In its Reply, Green Bullion reiterates "that the economic loss rule plainly bars recovery of any sums alleged to be due and owing ***under the three Agreements.***"  Green Bullion Reply at 5.  Thus, at the very least, Green Bullion argues that the Court should dismiss Count VI "to the extent that it seeks to recover for services performed under the Agreements." Id. at 7.

The Court agrees that if Count VI was premised on Green Bullion inducing

9

Plaintiff to continue making payments under the three Agreements, the economic loss rule would bar this claim.  "Where a contract exists, a tort action will lie only for intentional or negligent acts that are independent from acts that breach the contract." Brown v. Chamax, LLC, 51 So. 3d 552, 556 (Fla. Dist. Ct. App. 2010) (citing HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238 (Fla.1996) (holding that where the fraud complained of relates to the performance of the contract, the economic loss doctrine will limit the parties to their contractual remedies)).  However, to the extent that Count VI is based on an agreement between Green Bullion and Plaintiff to perform additional services, separate and apart from the three Agreements, the Court finds that the economic loss rule would not apply.  In Ladner v. AmSouth Bank, 32 So. 3d 99, 105 (Fla. Dist. Ct. App. 2009), for example, the Florida District Court of Appeal held that "the economic loss rule would not act as a bar to the [Plaintiffs] Ladners' tort claims against [Defendant] AmSouth that stem from the Ladners' reliance on AmSouth's representations when entering into the construction contract." 32 So. 3d at 105.  The court observed that "[w]hen ... fraud occurs in ... connection with misrepresentations, statements, or omissions which cause the complaining party to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort." Id. (quoting Output, Inc. v. Danka Bus. Sys., Inc., 991 So. 2d 941, 944 (Fla. Dist. Ct. App. 2008) (internal quotation marks omitted)).  Thus, because the economic loss rule would not serve as a bar to any claims based on services Plaintiff provided that were not part of the three Agreements, the Court will grant the motion to dismiss Count VI with prejudice to the extent it is based on the three Agreements and deny the motion as to any additional services.

Green Bullion also argues that this claim must be dismissed for failure to state a claim.  Specifically, Green Bullion argues that dismissal is warranted because Plaintiff "has failed to allege that Green Bullion made a misrepresentation of material fact or that any alleged misrepresentation of fact was false when made" and "has failed to allege that it reasonably relied upon any such purported misrepresentation in entering into either the Advertising Agreement or the Super Bowl Agreement."  Green Bullion Motion at 11-12.  Plaintiff disputes this, contending that it has stated a claim for fraud in the inducement under Florida law and the misrepresentations were made to induce Plaintiff to perform additional services, not just services under the Super Bowl and 2009 Advertising Agreements.  Green Bullion Response at 10-15.

"To state a cause of action for fraud in the inducement, the Plaintiff must allege (a) a misrepresentation of a material fact; (b) that the representor of the misrepresentation knew or should have known of the statement's falsity; (c) that the representor intended that the representation would induce another to rely and act on it; and (d) that the plaintiff suffered injury in justifiable reliance on the representation."  Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc., 79 So. 3d 855, 861 (Fla. Dist. Ct. App. 2012) (quoting Samuels v. King Motor Co. of Fort Lauderdale, 782 So. 2d 489, 497 (Fla. Dist. Ct. App. 2001)).  Additionally, to survive a motion to dismiss, the complaint "must allege fraud with the requisite particularity required by Florida Rule of Civil Procedure 1.120(b), including who made the false statement, the substance of the false statement, the time frame in which it was made and the context in which the statement was made."  Eagletech Commc'n, Inc., 79 So. 3d at 862 (quoting Bankers Mut. Capital Corp. v. U.S. Fid. & Guar. Co., 784 So. 2d 485, 490 (Fla. Dist. Ct. App. 2001)).

11

Generally, "a false statement of fact, to be a ground for fraud, must be of a past or existing fact, not a promise to do something in the future." Wadlington v. Continental Med. Servs., Inc., 907 So. 2d 631, 632 (Fla. Dist. Ct. App. 2005) (quoting Vance v. Indian Hammock Hunt & Riding Club, Ltd., 403 So. 2d 1367, 1371 (Fla. Dist. Ct. App. 1981) (internal quotation marks omitted)). An exception to this general rule occurs, however, "where the promise to perform a material matter in the future is made without any intention of performing or made with the positive intention not to perform." Id. Thus, the Court disagrees with Green Bullion's assertion that "a promise to do something cannot form the basis of a misrepresentation claim, even if that statement induces another to *enter into* a contract." Green Bullion Motion at 12.[5] Here, Green Bullion's arguments that Count VI fails to state a claim are directed solely towards Plaintiff's claims brought pursuant to the existing Agreements.[6] Because the Court has already determined that the fraud in the inducement claim must be dismissed to the extent it is

---

[5] Green Bullion's reliance on White Holding Company, LLC v. Martin Marrietta Materials, Inc., 423 Fed. Appx. 943, 944-45 (11th Cir. 2011), to support this argument is misplaced. White Holding Company, LLC did not address a situation where a contract was entered due to a misrepresentation that the representor knew was false when made. See Wadlington, 907 So. 2d at 632; see also Vance, 403 So. 2d at 1372 (finding that where defendant made false promises with no intention of performing, or with the positive intention not to perform, plaintiff could state claim for fraud).

[6] Indeed, Green Bullion acknowledges in its Reply that "there is no need" for it to address Plaintiff's argument that its fraud in the inducement claim is based on additional services that Green Bullion induced it to provide. Green Bullion Reply at 7. Even if Green Bullion was moving to dismiss Count VI to the extent this claim is premised on additional services Plaintiff provided, which is unclear from the face of the motion, the Court would deny the motion because Plaintiff has alleged that Green Bullion knew at the time it induced it to provide additional services that it did not intend to pay for these services.

premised on any of the three Agreements, the Court need not consider these arguments in detail.  Therefore, Count VI will be dismissed with prejudice to the extent it is based on the three Agreements, but will survive to the extent it is based on additional services that Plaintiff provided.

### D. Aronson and Mofshin's Motion to Dismiss or for a More Definite Statement of Count VII.

Aronson and Mofshin seek to dismiss Count VII, a claim for fraudulent transfer pursuant to Fla. Stat. § 726.105(1)(a) brought against all Defendants, on the grounds that Plaintiff's "allegation that the Individual Defendants [Aronson and Mofshin] provided Euro with the Putative Guaranties prior to receiving the alleged fraudulent transfers from Green Bullion renders Euro's 'actual intent to hinder, delay, or defaud' allegations implausible on their face."  Aronson & Mofshin Motion at 4.  Alternatively, Aronson and Mofshin move for a more definite statement as to this claim.  Id.  Plaintiff disputes that Count VII should be dismissed or that Aronson and Mofshin are entitled to a more definite statement because "a valid guaranty fraudulently entered may still be enforced against the guarantor."  Aronson & Mofshin Response at 5.

The Florida fraudulent transfer statute, Fla. Stat. § 726.105, provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation ... [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  Fla. Stat. § 726.105(1).  To state a claim for a fraudulent transfer, a plaintiff must allege that "(1) there was a creditor to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which

could have been applicable to the payment of the debt due." SunGard Pub. Sector, Inc. v. Innoprise Software, Inc., No. 6:10-cv-1815-Orl-28GJK, 2012 WL 360170, at *6 (M.D. Fla. Feb. 2, 2012) (quoting Nationsbank, N.A. v. Coastal Utils., Inc., 814 So. 2d 1227, 1229 (Fla. Dist. Ct. App. 2002) (internal quotation marks omitted)).  Aronson and Mofshin argue that Plaintiff's fraudulent transfer claim is implausible because "if the Putative Guaranties existed at the time of the alleged fraudulent transfers, the alleged fraudulent transfers [to Aronson and Mofshin, the very people who executed the Guaranties,] cannot possibly have hindered, delayed, or defrauded Euro."  Aronson & Mofshin Motion at 4.  Plaintiff, however, contends that it is improper to assume that Aronson and Mofshin intended that the guaranties be valid.  Aronson & Mofshin Response at 5.  As Plaintiff points out, the Second Amended Complaint alleges that Green Bullion falsely represented that "the Guaranties would be honored if necessary" and that "Aronson and Mofshin refus[ed] to honor the Guaranties."  2d Am. Compl. ¶¶ 93-94.  Construing the Second Amended Complaint in the manner most favorable to Plaintiff, as the Court must at this stage in the proceeding, the Court cannot conclude that Plaintiff has failed to state a claim for fraudulent transfer.  See Arthur v. Thomas, 674 F.3d 1257, 1269 (11th Cir. 2012) ("We accept the allegations in the complaint as true and construe them in favor of the plaintiff.").

   The Court also concludes that Aronson and Mofshin are not entitled to a more definite statement.  As discussed in Section B, supra, a motion for a more definite statement should be granted only when a party is presented with an "unintelligible pleading."  The Court finds that Counts VII, is not an "unintelligible pleading" which requires a more definite statement.  See Clearwater Consulting Concepts, LLP, 2010

WL 916392, at *2.

### E. Aronson and Mofshin's Motion to Dismiss Counts VII and VIII.

Aronson and Mofshin also seek to dismiss Counts VII and VIII, which are both claims for fraudulent transfer against all Defendants, to the extent these claims seek to recover an amount equal to or greater than all money owed to Plaintiff.  Aronson & Mofshin Motion at 6.  Aronson and Mofshin argue that Florida's fraudulent transfer statute permits only avoidance of the underlying fraudulent transfers and does not permit Plaintiff to hold Aronson and Mofshin personally liable for Green Bullion's debts.  Id. at 7.  Plaintiff contends that it has alleged fraudulent transfers well in excess of the approximately $2.5 million it alleges it is owed by Green Bullion.  Aronson & Mofshin Response at 6; compare 2d Am. Compl. ¶ 38 (alleging Plaintiff is owed at least $2,567,492.50 for services provided to Green Bullion) with ¶ 44 (alleging Aronson and Mofshin transferred $15 million to owners of Common Units and Series A Preferred Units).  Even construing the allegations of the Second Amended Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff is not entitled to a judgment against Aronson and Mofshin in the amount of Green Bullion's debt on fraudulent transfer claims.  The Florida fraudulent transfer statute provides that a creditor may obtain "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim."  Fla Stat. § 726.108(1)(a).  Thus, this statute does not entitle Plaintiff to a judgment against Mofshin or Aronson in the amount of Green Bullion's debt.  Accordingly, the Court will grant Aronson and Mofshin's motion to dismiss Counts VII and VIII to the extent Plaintiff generally seeks a judgment against Aronson and Mofshin

in the amount of Green Bullion's debt.[7]

### F. Green Bullion, Aronson, and Mofshin's Motions to Strike Demand for Attorneys' Fees.

Aronson and Mofshin also move to strike Plaintiff's demand for attorneys' fees pursuant to Rule 12(f) on the grounds that Plaintiff has "offered no statutory, contractual, or alter ego basis for recovering its attorneys' fees against the Individual Defendants for their alleged receipt of fraudulent transfers from Green Bullion." Aronson & Mofshin Motion at 8. Plaintiff urges the Court to deny this motion to strike because the Florida fraudulent transfer statute "provides for a broad menu of remedies and grants the Court discretion in awarding them." Aronson & Mofshin Response at 7 (citing Fla. Stat. §

---

[7] In its Response, Plaintiff argues, without citing any paragraphs of the Second Amended Complaint as support, that "the Court could conclude that the alleged conduct plausibly supports even a piercing of the corporate veil." Aronson and Mofshin Response at 6. The Court declines to reach this conclusion. "A party seeking to pierce the corporate veil and prove alter ego liability must show both a blurring of corporate lines, such as ignoring corporate formalities or using a corporation for the stockholder's personal interest, and that the stockholder used the corporation for some illegal, fraudulent or other unjust purpose." Century Senior Servs. v. Consumer Health Benefit. Ass'n, Inc., 770 F. Supp. 2d 1261, 1265-66 (S.D. Fla. 2011) (citing Dania Jai–Alai Palace v. Sykes, 450 So. 2d 1114, 1121 (Fla. 1984) (finding that where counterclaim alleged that a parent company failed to keep the plaintiff corporation at arm's length, that it blurred the lines between the two corporations, such as by having the parent corporation manage the plaintiff corporation directly and by sharing a principal place of business, and that the parent corporation used the plaintiff corporation for a fraudulent purpose by using it to mislead creditors and to shield the parent corporation from liability for conversion and theft, the defendant had pled the necessary elements for piercing the corporate veil.))  Here, the mere allegation that Green Bullion was undercapitalized is insufficient to pierce the corporate veil against Mofshin and Aronson.  2d Am. Compl. ¶ 41.

16

726.108(1)).  The Court agrees with Aronson and Mofshin that Plaintiff has failed to articulate a statutory or contractual basis for attorneys fees.  The provisions of the Florida fraudulent transfer statute that Plaintiff contends support its right to attorneys' fees does not provide  that Plaintiff is entitled to attorneys fees against Aronson and Mofshin, the alleged transferees.  Accordingly, the Court will grant the motion to strike.  See Ninghai Genius Child Prod. Co. Ltd. v. Kool Pak, Inc., No. 11–61205–CIV, 2012 WL 1203821, at *3 (S.D. Fla. Apr. 11, 2012) (granting motion to strike demand for attorneys' fees where the plaintiff failed to articulate a statutory or contractual basis for fees).

Green Bullion moves to strike Plaintiff's demand for attorneys' fees in Count VI, Plaintiff's claim for fraud in the inducement.  Green Bullion Motion at 17.  Green Bullion contends that Plaintiff has failed to state a statutory or contractual entitlement to attorneys' fees.  Id.  In opposition, Plaintiff "concedes that attorneys' fees may be unawardable," but "urges the court to defer the question of attorneys' fees to the damages phase of this case."  Green Bullion Response at 15.  The Court will grant the motion to strike because Plaintiff has conceded that it is without a contractual or statutory basis for attorneys' fees.  See Mascaro Aviation, L.L.C. v. Diamond Aircraft Indus., Inc., No. 10-60556-CIV, 2011 WL 856805, at *12 (S.D. Fla. Mar. 8, 2011) (denying as moot motion to strike attorneys' fees demand where the plaintiffs effectively conceded that they had no basis to demand attorneys' fees).

### III. CONCLUSION

Based on the foregoing it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Green Bullion Financial Services' Motion to Dismiss, For More Definite Statement, and to Strike Portions of Plaintiff's Second Amended Complaint [DE

17

45] is **GRANTED IN PART AND DENIED IN PART** as follows:

    a.    The motion for a more definite statement of Counts II through V is **DENIED**;

    b.    The motion to dismiss Count VI is **GRANTED WITH PREJUDICE** with respect to the three Agreements only, but **DENIED** as to separate services Plaintiff alleges it provided that were not covered by the three Agreements;

    c.    Plaintiff's demand for attorneys' fees in Count VI is **STRICKEN**; and

2.    Defendants Jeffrey Aronson and Howard Mofshin's Motion to Dismiss, For More Definite Statement, and to Strike Portions of Plaintiff's Second Amended Complaint [DE 46] is **GRANTED IN PART AND DENIED IN PART** as follows:

    a.    The motion to dismiss or for a more definite statement of Count VII is **DENIED**;

    b.    The motion to dismiss Counts VII and VIII is **GRANTED WITH PREJUDICE** to the extent Plaintiff generally seeks a judgment against Defendants Aronson and Mofshin in the amount of Green Bullion's debt; and

    c.    Plaintiff's demand for attorneys' fees in Counts VII and VIII is **STRICKEN**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on this 11th day of May, 2012.

*/s/ James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.